UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA



UNITED STATES OF AMERICA,

      Plaintiff,

      v.

HUAKAI (O.N. 1215902), its boilers,
engines, machinery, masts, spars, rigging,
boats, anchors, cables, chains, tackle,
tools, bunkers, pumps and pumping
equipment, apparel, furniture, fittings and
equipment, spare parts, and all other
appurtenances, etc., *in rem*,

      Defendant.

IN ADMIRALTY

Civil No.: 2:10CV233

## VERIFIED COMPLAINT FOR FORECLOSURE OF FIRST PREFERRED FLEET MORTGAGE AGAINST THE HUAKAI, *IN REM*

      The complaint of Plaintiff, United States of America, alleges upon information and belief as follows:

      1.     This is a case within the admiralty and maritime jurisdiction of this Honorable Court, as hereinafter more fully appears, and plaintiff's claims are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

      2.     Plaintiff is the United States of America, a sovereign nation, authorized to sue by 28 U.S.C. § 1345.

      3.     At the time of its owner's mortgage defaults, the defendant vessel, HUAKAI (Official No. 1215902), its engines, boilers, lockers, machinery, masts, spars,

rigging, boats, bunkers, electronics, anchors, cables, chains, tackle, tools, pumps and

pumping equipment, apparel, furniture, fittings and equipment, spare parts, and other

appurtenances, etc., whether on board or not, and any and all additions, improvements,

and replacements thereto (hereinafter the "Vessel"), was a documented vessel of the

United States. The Vessel and its sister ship, the ALAKAI (Official No. 1182234)

(hereinafter collectively the "Vessels") are both passenger and vehicle fast ferries. The

ALAKAI briefly operated in the waters of Hawaii. The Vessel was not, upon delivery,

put into commercial operation. Each is now, or during the pendency of this action will

be, within the navigable waters of this District and within the jurisdiction of this

Honorable Court.

4.      At all times material herein, HAWAII SUPERFERRY, INC., was a

corporation incorporated in the State of Hawaii (hereafter, the "Shipowner"), and was

initially the owner of the Vessels.

5.      On October 28, 2005, in order to partially finance the construction of the

Vessels, the United States, represented by the Secretary of Transportation, acting by and

through the Maritime Administration (the "Secretary") entered into, and the Shipowner

accepted, a Commitment to Guarantee Obligations ("Guarantee Commitment") whereby

the United States committed to guarantee payment in full of all unpaid interest on, and the

unpaid principal balance of, a portion of the Shipowner's financial obligations to pay for

the Vessels.

6.     The Shipowner also entered into a Loan Agreement providing for a construction period loan in the aggregate amount of $139,731,000 ("Loan Agreement") pursuant to which the Shipowner issued, in favor of ABN Amro Bank, N.V., as lender, two promissory notes respectively designated "United States Government Guaranteed Ship Financing Obligation, 2005 Series A," in the principal amount of $68,717,064, and "United States Government Guaranteed Ship Financing Obligation, 2005 Series B," in the principal amount of $71,013,936 (together the "Guaranteed Notes") having maturity dates and interest rates set forth in the Loan Agreement and the Guaranteed Notes.

7.     On April 27, 2006, under the terms of the Guarantee Commitment, the Shipowner refinanced it obligations under the Loan Agreement and Guaranteed Notes by issuing and selling long term bonds respectively designated "United States Government Guaranteed Ship Financing Obligations, 2006 Series A," in the principal amount of $68,717,064 (the "Series A Obligations"), and "United States Government Guaranteed Ship Financing Obligations, 2006 Series B," in the principal amount of $71,013,936 ( the "Series B Obligations" and together with the Series A Obligations, the "Obligations"). The proceeds of these bond sales were used to pay off the Shipowner's obligations under the Loan Agreement and the Guaranteed Notes, and finance a portion of the cost of construction of the Vessels.

8.     The Obligations were issued and sold pursuant to a Trust Indenture dated April 27, 2006, between the Shipowner and Wilmington Trust Company as indenture trustee (the "Indenture Trustee," a copy of which is attached as Exhibit A).

9.     Pursuant to the provisions of then Title XI of the Merchant Marine Act, 1936, now codified at 46 USC §§ 53701, *et seq.*, (the "Act"), on April 27, 2006, the United States guaranteed payment of the principal of and interest on the Original Obligations (the "Guarantee") in the event of default by the Shipowner under the terms of the Trust Indenture (the "Guarantee Transaction").

10.    As part of the Guarantee Transaction, on April 27, 2006, the Shipowner duly made, executed, and delivered to the Secretary two (2) promissory notes, (each a "Secretary's Note" and together the "Secretary's Notes"); one in the principal amount of the Series A Obligations ($68,717,054) and the other in the principal amount of the Series B Obligations ($71,013,936), each bearing the same interest rate and maturity date as the respective Obligation. (Copies of the Secretary Notes are attached as Exhibit B.)

11.    Each Secretary's Note is payable on the same terms and conditions as its respective Obligation and any payment on an Obligation, other than by the United States, is a payment on the respective Secretary's Note.

12.    As security for the due and timely payment of the Guaranteed Notes, the Shipowner executed and delivered to the United States a security agreement, Contract No. MA-14018, dated as of October 28, 2005, which was amended and restated on April 27,

4

2006, by an Amended and Restated Security Agreement (as amended and restated, the "Security Agreement," a copy of which is attached as Exhibit C).

13.    As additional security for the due and timely payment of the Secretary's Notes and all amounts owing to the United States under the Security Agreement, the Shipowner executed and delivered to the United States a first preferred fleet mortgage (as later supplemented, the "Mortgage") covering the ALAKAI as of its delivery date, May 30, 2007. The Mortgage was recorded with the United States Coast Guard National Vessel Documentation Center at Falling Waters, West Virginia (the "NVDC") on May 30, 2007, at Batch Number: 589885, Document ID: 7231482. On April 21, 2009, the delivery date of the HUAKAI, the Shipowner executed Supplement No. 1 to the Mortgage, which was recorded with the NVDC at Batch Number 687211 and Document ID 10346493, adding the HUAKAI. (Copies of the First Preferred Fleet Mortgage and Supplement No. 1 to First Preferred Fleet Mortgage are attached as Exhibit D.)

14.    The Secretary's Notes incorporate by reference the provisions of the Security Agreement and the Mortgage, and the Mortgage, in turn, incorporates by reference the provisions of the Security Agreement with the exception of the granting clauses.

15.    On May 30, 2009, the Shipowner filed for relief under Chapter 11 of the Bankruptcy Code and failed to make the debt service payment due on the ALAKAI.

5

16.    On June 30, 2009, pursuant to Section 6.09 of the Trust Indenture, the United States assumed the Series A Obligations and paid the amount of the May 30, 2009, debt service payment plus interest.

17.    Also on June 30, 2009, pursuant to the notice of assumption sent by the United States to the Indenture Trustee of the Series A Obligations, a copy of which was sent to the Shipowner, the Shipowner was notified of its default in the payment of principal and interest on the Series A Obligations.  (A copy of the June 30, 2009, notice is attached as Exhibit E.)

18.    On July 1, 2009, the Bankruptcy Court issued an order (the "Order") by which the Vessels were abandoned by the Shipowner's bankruptcy estate and surrendered to the United States.  Pursuant to Paragraph 3 of that Order, the automatic stay pursuant to 11 U.S.C. § 362 (the "Stay") was modified "solely to the extent necessary to permit the Secured Creditors [which include the United States] to exercise any rights and remedies they may have against the Vessels, including, but not limited to, foreclosing upon the Vessels and holding, laying up, leasing, chartering, operating, or otherwise using the Vessels."  In addition, the Stay was modified as against the Debtors (which included the Shipowner) "solely for the purpose of the Secured Creditors naming the Debtors as parties to any action or proceeding commenced by them to arrest and foreclose upon the Vessels." (A copy of the Order is attached as Exhibit F.)

19.     The Shipowner failed to pay the debt service due on the Series B
Obligations on October 21, 2009, which failure continued for 30 days, constituting a
Payment Default.

20.     On November 17, 2009, the Secretary notified the Indenture Trustee that the
Secretary would redeem all the interest and principal due and owing on the Series A
Obligations under the Guarantee on a date 40 days following the Indenture Trustee's
receipt of such notice. (A copy of the November 17, 2009, notice is attached as Exhibit
G.)

21.     On  November 21, 2009, the Indenture Trustee for the Series B Obligations
holders demanded payment by the United States pursuant to the Guarantee of the Series B
Obligations.  (A copy of the demand notice is attached as Exhibit H.)

22.     On December 1, 2009, pursuant to Section 6.01(a) of the Security
Agreement, the  Secretary sent a notice of default to the Shipowner, for failure to make a
debt service payment on October 21, 2009.

23.     On December 2, 2009, the United States made payment of $73,542,426.84
to the Indenture Trustee on behalf of the Series B Obligations bondholders which was the
full amount of the interest and principal due and owing on the Series B Obligations at that
time.  (A copy of the proof of payment is attached as Exhibit I.)

24.     On December 28, 2009, the United States made payment of $63,984,974.85
to the Indenture Trustee on behalf of the Series A Obligations bondholders, which was

7

the full amount of the interest and principal due and owing on the Series A Obligations at that time. (A copy of the proof of payment is attached as Exhibit J.)

25.     The amount the Shipowner owes the United States pursuant to the Secretary's Notes and the Mortgage is detailed in a Declaration of Kenneth Kirwan of the Office of Accounting, Maritime Administration, U. S. Department of Transportation (the "Accounting," a copy of which is attached as Exhibit K).

26.     Upon a default under the terms of the Mortgage and payment of the Guarantee by the United States, the United States has the right to exercise all of its *in rem* rights and remedies as provided in the Mortgage including the right to foreclose on the Vessels pursuant to the United States Code, Chapter 313 of Title 46.

27.     Soon after the surrender of possession of the defendant Vessels to the United States, the Vessels were taken to Lambert's Point Docks, in Norfolk Virginia, for safe keeping and lay-up at the sole expense of the United States. The Vessels are currently in lay-up within the jurisdiction of the Court.

28.     The United States has taken all action necessary to establish and impose a preferred fleet mortgage lien on the defendant Vessels, and has not waived the preferred status of the Mortgage. (A copy of the Coast Guard Form 1330, Certificate of Ownership for both Vessels, is attached as Exhibit L.)

29.     The Shipowner's defaults have not been cured and the Shipowner remains in default and the sums due and owing to the United States remain unpaid.

8

WHEREFORE, plaintiff, United States of America, prays:

1.    That actual notice of the commencement of this suit, in the manner approved by this Court, be given as specified, to any person, firm or corporation which has recorded a notice of claim of any undischarged lien upon the Vessel;

2.    That, pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims (as amended), this Court enter an order authorizing the arrest of the Vessel;

3.    That a Warrant be issued for the arrest of the Vessel, together with its boilers, engines, machinery, masts, spares, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances etc;

4.    That Plaintiff United States of America be declared the holder of a valid preferred first fleet mortgage lien on the Vessel, to the extent of its claim herein;

5.    That judgment of condemnation and sale be entered against the Vessel, its boilers, engines, machinery, masts, spares, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances etc;

6.    That an order for interlocutory sale of the Vessel be issued pursuant to Supplemental Admiralty Rule E (9)(b);

7.     That the Vessel be sold and the proceeds of the sale be applied first to costs and expenses associated with the sale and then applied to payments of the Secretary's Notes and the Mortgage, together with interest thereon;

8.     That the Court order judgment in favor of the plaintiff against the Vessel, its boilers, engines, machinery, masts, spares, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc in rem, for all sums due and owing to the Secretary, for all insurance premiums and other care and preservation costs of the Vessel paid by the plaintiff after the date of the commencement of this action, for reasonable attorney's fees, and for the costs of this suit incurred herein;

9.     That the Court decree that any person, firm or corporation claiming any interest in the Vessel or against the Vessel, its boilers, engines, machinery, masts, spares, rigging, boats, anchors, cables, chains, tackle, tools, bunkers, pumps and pumping equipment, apparel, furniture, fittings and equipment, spare parts, and all other appurtenances, etc, appear in this action or be forever barred and foreclosed as to any right, equity of redemption, claim or lien in or against the Vessel and every part thereof;

10.     That Plaintiff United States of America have such other and further relief as may be just and proper.

DATED: May 20, 2010

Respectfully submitted,

10

TONY WEST
Assistant Attorney General

EDMUND FERGUSON
Virginia State Bar 74877
Trial Attorney
PETER MYER
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
(202) 616-4029
Fax: (202) 616-4159
Edmund.Ferguson@usdoj.gov

11

## VERIFICATION

EDMUND M. FERGUSON says:

I am a Trial Attorney in the Torts Branch, Civil Division, U. S. Department of Justice, and one of the attorneys for plaintiff United States of America herein, and make this verification by authority for and on its behalf; I have read the foregoing complaint for foreclosure, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

DATED: May 20, 2010

_____
EDMUND M. FERGUSON

12

Please serve:
Vessel HUAKAI (Official No. 1215902)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2010, the foregoing document was filed

with the Clerk of Court and served by first class mail, postage prepaid, on the following

interested parties and holders of liens filed with the United States Coast Guard:

Clear Thinking Group
401 Towne Centre Drive
Hillsborough, New Jersey  08844

Craig Wolfe, Benjamin Blaustein
Kelley Drye & Warren LLP
101 Park Avenue
New York, New Yorrk 10178

Austal USA LLC
1 Dunlap Drive
Mobile, Alabama 36602

HMS-Hawall, Inc. and
Hornblower Marine Services, Inc.
115 East Market Street
New Albany, Indiana 47150

State of Hawaii
Department of Transportation
869 Punchbowl Street
Honolulu, Hawaii 96817

EDMUND M. FERGUSON